UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 06-48745-WS
 Chapter 7
TONIA L. SHELBY, Honorable Walter Shapero

        Debtor.
_____/

## OPINION IN CONNECTION WITH THE UNITED STATES
## TRUSTEE'S MOTION TO DISMISS

### I. Introduction

Before the Court is the United States Trustee's ("UST's") Motion to Dismiss For Abuse Debtor's chapter 7 case under 11 U.S.C.§707(b)(3).[1] The issue under § 707(b)(3) (where the presumption of abuse does not exist or has been rebutted) is whether the totality of the circumstances demonstrate abuse. After hearing arguments and taking evidence, the Court took the issue under advisement.

### II. Facts

Tonia Shelby (the "Debtor") filed for chapter 13 protection on July 7, 2006. She converted her case to a chapter 7 on October 30, 2006. The Debtor has worked as a teacher for the Detroit School District for ten years. Her annual income at the time of filing was approximately $61,000.00. Since the filing of bankruptcy, the Debtor's home was foreclosed upon.[2] Additionally, she owned a condominium (which had a $529.00 monthly mortgage payment, not including taxes and insurance),

---

1. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Publ. L. No. 109-8, § 102(a) (2005), became effective in cases filed on or after October 17, 2005. All code section references are to Title 11 as amended by BAPCPA.

2. Relief from the automatic stay was granted on November 29, 2006, based on creditor's motion and the Debtor's non-response.

that she leased out at $700.00 a month that has now apparently been surrendered. The Debtor's income has recently been reduced by $524.07 a month because she voluntarily ceased optional "lunchroom duty." It is not clear exactly why she did so.

The testimony and evidence shows that the Debtor's relevant expenses include: $810.10 in monthly payments on a lease of a Mercedes Benz vehicle which expires in February 2008; an estimated $1,800.00 monthly in principal and interest payments for a hypothetical new home[3] (with three bedrooms, two baths, a basement, and a garage), and an additional $200 for taxes and insurance on the home. In her amended Schedule I, her estimated monthly payroll deductions for taxes and social security are $1,907.51.[4] Her mandatory deduction for retirement is scheduled as $273.54, however at the hearing, testimony and evidence showed the correct amount of that deduction to be $115.85. After Debtor filed her bankruptcy, her parents purchased her new furniture from her, and she states she owes them approximately $2,000.00 which she intends to pay them.

### III. Totality of the Circumstances

For cases in which the presumption of abuse does not arise or is rebutted, the Court must consider whether under the totality of the circumstances granting relief would be an abuse of chapter 7. 11 U.S.C. § 707(b)(3). Prior to the BAPCPA, a case could be dismissed for "substantial abuse." *In re McIvor*, 2006 WL 3949172, at *4 (Bankr. E.D. Mich November 15, 2006). Some courts have found that the "standard for evaluating abuse under . . . the new act is identical to the

---

3. Debtor's attorney stated that she estimated the number for payroll and social security at $1,907.51, and it was 18% of the gross income listed on the amended Schedule I. At the estimated 18%, the payroll deductions with the overtime pay should have been $1,145.02, and deductions without the overtime pay should have been $1,050.69.

4. She will likely shortly surrender her existing home to the mortgagee.

2

standard used for determining 'substantial abuse'" under the old act. *Id. See also In re Travis*, 353 B.R. 520, 530 (Bankr. E.D. Mich. 2006); *In re Zaporski*, 2007 WL 1186032, at *11 (Bankr. E.D. Mich. April 17, 2007). As this Court has noted in so many words in other 707(b)(3) cases, the argument is made by some that the elimination of the word "substantial" from the prior statute has meaning enough to be interpreted as having changed (lowered) the abuse threshold. As a matter of statutory construction one normally assumes a deletion was intended to effect a meaningful change. The dictionary definition of the word "substantial" means having substance or carrying weight. Here it is used in connection with the word "abuse," however, and that latter word "abuse" in and of itself embodies or infers a meaningful level of substance and substantiality, i.e., trivial, or immaterial or less than substantial actions, are likely not an "abuse." Therefore, the difference between the old and new statute becomes almost too subtle a one to be able to meaningfully articulate let alone apply. To the extent one might be able to articulate the distinction, the rather small difference would not make a difference under the facts in this case, in any event.

The UST's position in this case is primarily that there is an ability to trim excessive expenses which warrants dismissal of the case under § 707(b)(3) because it shows lack of neediness.

The United States Trustee, in this and most other 707(b) motions it files, emphasizes the statement in the case of *In re Krohn*, 886 F.2d 123 (6th Cir. 1989), where in speaking about neediness and under it the factor of a debtor's ability to repay debts out of future earnings, the Court said, "that factor alone may be sufficient to warrant dismissal." Id. at 126. Aside from noting the crucial word "may" in that formulation, it should be considered in the context of the facts, other statements, and legal conclusions in that same case, and, in this Court's view should not be inappropriately distilled out and then built upon in other, not necessarily factually analogous, cases.

3

While talking about both honesty and neediness as essentially alternative grounds for 707(b) dismissals and indeed listing various non-exclusive factors to be considered in determining each, what the Krohn Court actually did was affirm a bankruptcy judge's substantial abuse dismissal. It did so by first saying:

> "the bankruptcy judge focused upon Krohn's honesty and found sufficient evidence of bad faith to warrant substantial abuse dismissal." (Id. at 127).

and second by noting, among other things that

> "the debtor treats his creditors in a callous manner and indulges in a life style in excess of a reasonable standard of living. The goals of bankruptcy are to provide an honest debtor with a fresh start and to provide or an equitable distributions to creditors. The debtor herein, although he has minimal assets, appears to be seeking a "head start" with no attempt to deal with creditors on an equitable basis." (Id. at 128.)

The Court concluded that the totality of circumstances "demonstrated the absence of the degree of honesty and need contemplated by 707(b)." (Id. at 128).

So Krohn was a case where both dishonesty and lack of need were specifically stated as being bases for the decision (and an argument can be made for saying the former was more influential in the result than the latter). The Court was careful, however, to point to the existence in that case of some of the various factors it articulated, as being relevant to each, and both, of the honesty and neediness inquiries. This Court's point in discussing this (even in a case which primarily involves neediness) is that the inquiry is, and remains, one of the totality of circumstances, where (a) elements of either dishonesty or neediness or both might be involved, and (b) where the debtor's ability to pay creditors out of future earnings is an important, but not necessarily decisive, consideration in determining neediness. Furthermore, in any such totality of circumstances inquiry, there is always a question of

4

the weight to be afforded the various facts and factors as well as the possibility that any one or two of them because of their nature or extent may be so strong or convincing as to color, influence, or even dictate a particular result. This may be one of those cases, but is a close call.

### A. Ability to Pay

The Court finds the Debtor can trim expenses and as a result pay a significant dividend to her creditors. Debtor's Mercedes vehicle (a vehicle in the luxury class) lease expires in February of 2008. Her economic situation appears to be such that after that date, if not before, she can obtain a suitable and reasonable vehicle paying materially less than the $810 per month she is paying under that existing lease. The lease can be rejected under § 365, but in any event expires, within seven months, in February 2008, which leaves approximately four years for her to make appropriate use of the difference between the current Mercedes payment and that for a more reasonable (and lower cost) vehicle. The indicated difference would yield material dollars to pay to creditors, particularly when combined with other potential expense reductions.

Payroll taxes, appear be over estimated. At trial, the Debtor's attorney stated that the correct amount was about 18% of gross income. Debtor's figure is some $850.00 more than the 18%. Including all withholding (state and federal) on taxable income, excluding the non-taxable retirement pay, the withholding may be overestimated by over $250. To the extent the estimate is also based on receipt of the now discontinued "lunchroom duty" pay, it would be proportionally reduced.

Debtor, a single person without dependents, has already demonstrated an inability, despite a relatively stable income situation, to keep making mortgage payments plus taxes and insurance all totaling some $2,000 per month (on a home she is now surrendering). At one point in the evidentiary hearing, even the Debtor estimated substitute housing on a lease basis of some $800 to $1,000 per

month, or a condominium or other purchase obligation of some $1,000 to $1,400 per month, albeit at an earlier hearing she estimated potential total housing costs at about the same $2,000 per month level she was then obligated for at a time when she may not have sufficiently fully explored what the market had available.  Debtor has also demonstrated in the recent past her ability to augment her teachers income by performing lunchroom duty in the school, the relinquishment of which without any reasonable explanation also plays into the inquiry.

There have also been some problems as to the contents of various schedules and amendments thereto, and belated disclosure of substantial debts, which while in and of themselves, are not of a nature or degree that would be a basis for a finding of abuse, do somewhat reinforce the conclusion the Court has come to, in their absence.  Finally, it appears that for many months Debtor has not been making the indicated mortgage payments, and the Trustee rightfully asks on what that "saved" money has been spent - Debtor's answers not fully accounting for all of said amounts.  Debtor's lately amended Schedule F listed for the first time some $62,500 of student loans, which are likely not dischargeable in a chapter 13 case and may not be in a chapter 7 case as well as a $7,290 obligation on the vehicle lease above referred to, as well as some $10,200 in condominium fees, presumably on the property she is also relinquishing.  The total schedule F debt including those items is $82,949.

Dealing fairly and in good faith with one's creditors in bankruptcy includes receptivity to the idea, and demonstrated willingness to carry it out, of a certain amount of belt tightening, particularly in a situation, where as here, there exists a relatively stable income source, and minimal or non-existent unpredictable needs of the Debtor or demands of dependents, and a relatively small amount of non-dischargeable debt.  The foregoing facts demonstrate to this Court that Debtor (a) does have the ability to substantially fund a chapter 13 plan, with meaningful payments on dischargeable debts,

6

and (b) thus far has not demonstrated that sense of belt tightening that is warranted under the circumstances of this case.

This Debtor does deserve the chance, however, to decide if that is the proper course for her. Accordingly, the U.S. Trustee's Motion to Dismiss will be granted unless, within 20 days from the date of entry of this Opinion, the Debtor converts this case to a chapter 13 proceeding. The U.S. Trustee shall present an appropriate order at the appropriate time.

**Signed on July 25, 2007**

                                              **/s/ Walter Shapero**
                                **Walter Shapero**
                                **United States Bankruptcy Judge**